UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
EDITH M. BUDIK,                     )
                                    )
            Plaintiff,              )
                                    )
    v.                              )   Civil Action No. 12-329 (RBW)
                                    )
DARTMOUTH-HITCHCOK MEDICAL          )
CENTER, et al.,                     )
                                    )
            Defendants.             )
_____ )

# MEMORANDUM OPINION

This case, in which the pro se plaintiff, Edith Budik, filed a complaint against the defendants, Dartmouth-Hitchcock Medical Center ("Dartmouth-Hitchcock") and retired Colonel ("Col.") Steven M. Princiotta, M.D., alleging violations of certain Army regulations, the Fifth and Fourteenth Amendments to the Constitution of the United States, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (2006), misrepresentation, fraud, and intentional infliction of emotional distress, is currently before the Court on Defendant Dartmouth-Hitchcock Medical Center's Motion To Dismiss for Lack of Personal Jurisdiction ("Dartmouth-Hitchcock Mot."), and Col. Princiotta's and the United States' Defendants' Motion to Substitute the United States and Dismiss ("Princiotta Mot."). For the reasons explained below, the defendants' motions will be granted.[1]

---

[1] In deciding the motions, the Court considered the following filings made by the parties in addition to those already identified: (1) the Memorandum in Support of Defendant Dartmouth-Hitchcock Medical Center's Motion to Dismiss for Lack of Personal Jurisdiction ("Dartmouth-Hitchcock Mem."); (2) the plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Pl.'s Dartmouth-Hitchcock Opp'n"); (3) Defendant Dartmouth-Hitchcock Medical Center's Reply to Plaintiff's Opposition to Motion to Dismiss ("Dartmouth-Hitchcock Reply"); (4) the Memorandum of Points and Authorities in Support of Defendant's Motion to Substitute the United States and Dismiss ("Princiotta Mem."); (5) the plaintiff's Opposition to Defendant's Motion to Substitute and to Dismiss ("Pl.'s Princiotta Opp'n"); and (6) the Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendants' Motion to Substitute the United States and Dismiss ("Princiotta Reply").

## I.  BACKGROUND

The plaintiff asserts the following allegations in support of her claims against the defendants. This dispute arises out the plaintiff's application for employment as a neuroradiologist at Dartmouth-Hitchcock in New Hampshire.  Compl. ¶¶ 1, 10.  "On . . . [April 10, 2008], Lauren Krebs of American Medical Recruiters[2] . . . informed [the p]laintiff, of several neuroradiology positions, one of which was at [Dartmouth-Hitchcock]."  Id. ¶ 10.  After obtaining the plaintiff's permission to do so, Ms. Krebs forwarded the plaintiff's curriculum vitae to Dartmouth-Hitchcock for review.  Id.  Although the plaintiff did not want to apply for a full time position, Dr. Laurence Cromwell, a radiologist at Dartmouth-Hitchcock, subsequently reached out to the plaintiff about her application and encouraged her to apply for a "locum tenens" position.[3]  Id. ¶ 12.  The plaintiff agreed to Dr. Cromwell's proposition.  Id.  "On . . . [May 8, 2008], in accordance with the customary requirement of the New Hampshire Board of Medicine . . . that institutions inform them of the name of [a] locum tenens physician and the dates he/she will be practicing, . . . [Dartmouth-Hitchcock] submitted a letter to" the New Hampshire Board of Medicine regarding the plaintiff.  Id. ¶ 13.  The plaintiff also submitted an application to the New Hampshire Board of Medicine for a locum tenens license, and her application was granted.  Id.

---

[2] According to the plaintiff, defendant Dartmouth-Hitchcock is not affiliated with the American Medical Recruiters, but "is required to pay them a fee for any qualified candidates that [American Medical Recruiters] refers to them regardless of whether the candidates are hired.  [The p]laintiff had no agreement or contract with [American Medical Recruiters]."  Compl. ¶ 10 n.1.

[3] A locum tenens position is a temporary or substitute position.  See Black's Law Dictionary (9th ed. 2009); Compl. ¶ 12 (indicating that the plaintiff was applying to locum tenens positions until she decided where she wanted to seek permanent employment).

On May 11, 2008, the plaintiff submitted her completed "[Dartmouth-Hitchcock] Pre-Employment Application." Id. ¶ 14.  In completing the Pre-Employment Application, the "[p]laintiff was honest and truthful in answering all questions to the best of her knowledge and belief." Id.  Thereafter, the "[p]laintiff received the New Hampshire Uniform Credentialing Application." Id. ¶ 15.  The "instructions for [the] application for credentialing" read, in part, as follows:

> During the credentialing process[,] the Office of Clinical Affairs will contact you either via phone or in writing of any discrepancies or questions that may arise. You will be given the opportunity to correct, explain and/or revise any erroneous information prior to the completion of the credentialing process for your application.

Id. ¶ 25.

During the course of a "3-day site visit with [Dartmouth-Hitchcock], which the plaintiff attended "at the request of Dr. Cromwell," the plaintiff, "as specified in the credentialing application instructions[,] . . . took advantage of" the opportunity "to discuss two old incidents that [the p]laintiff was unsure of how to address on the Uniform Credentialing application with their credentialing specialist, [Michelle Scearbo]." Id. ¶¶ 16-17.  According to the plaintiff, "[t]hese incidents involved two erroneous reports, namely incidents from 23 . . . and 32 . . . years in the past that appeared on the Federation Credentialing Verification Service report."[4] Id. ¶ 17. "The credentialing specialist uttered her doubts about the relevancy of these incidents and . . . explain[ed] to [the p]laintiff that they had a 'last-5-year verification rule' reach-back for evaluating the credentials of locum tenens applicants." Id.  The plaintiff "completed the [credentialing application] in the office of the credentialing specialist and handed it along with

---

[4] According to the plaintiff, "[t]he Federation Credentialing Verification Service report is a verification service retained by physicians to verify the physician's medical credentials for submission to State Medical Boards." Compl. ¶ 17 n.4.

her [curriculum vitae] to the specialist." Id. ¶ 18. The plaintiff answered the questions "honest[ly] and truthful[ly] . . . to the best of her knowledge and belief, and the specialist acknowledged the negative information that the [p]laintiff provided to her from the [Federation Credentialing Verification Service] report." Id.

"At the completion of her interviews, Dr. Cromwell once again broached the topic of [the p]laintiff taking on a permanent position with [Dartmouth-Hitchcock], and it was at this time that [the p]laintiff decided to apply for a permanent license that could run in tandem [with] the locum tenens" license for which she had already applied. Id. ¶ 19. After the plaintiff agreed to apply for the permanent position, she subsequently "sent a letter to [the New Hampshire Board of Medicine] to apprise them of the erroneous information on the [Federation Credentialing Verification Service] report, as [the Board] would not be receiving the . . . report until such time as [the p]laintiff [had] submit[ted] an application for a permanent position."[5] Id. ¶ 20. The plaintiff "made herself available to speak to Board members" about the report, and also "spoke with Ms. Scearbo regarding the letter that [the plaintiff] sent to [the Board] and furnished her a copy of the letter at her request." Id. The "New Hampshire Board of Medicine granted [the p]laintiff a locum tenens license without further explanation other than submission of this letter." Id.

According to the plaintiff, she was required to provide more documents than other applicants during the credentialing process. Id. ¶ 21. Additionally, Ms. Scearbo "carefully scrutinized [the p]laintiff's Master Degree, a degree that was not relevant to the position being applied for, stating: 'That seems like a long time for a master['s] program.'" Id.

---

[5] The "[New Hampshire Board of Medicine] uses the [Federation Credentialing Verification Service] report when an applicant is applying for a permanent position," but not when an applicant seeks only "an in locum tenens license." Compl. ¶ 20 n.5.

During the course of the credentialing process, "[Col.] Princiotta, the then Deputy Commander for Clinical Services . . . , and Chair of the Credentialing Committee at Landstuhl Regional Army Medical Center . . . [,] published a negative statement" from a prior performance evaluation "to [Dartmouth-Hitchcock] without [the p]laintiff's knowledge." Id. ¶ 22. The statement reads: "Colonel Budik had some problems with staff interactions which resulted in several complaints and clinicians going to other radiologists instead." [6] Pl.'s Princiotta Opp'n at 1-2. The plaintiff was not provided with a copy of the statement, nor was her consent obtained prior to publication of the statement. Compl. ¶ 22. "Dr. Princiotta reported to [Dartmouth-Hitchcock] that this statement was substantiated by 'documents[,]' but no substantiating documents were ever provided, or found during a subsequent thorough [Freedom of Information Act] officer investigation." Id.

"Dartmouth-Hitchcock subsequently confirmed that [it] stopped the credentialing process on the same day [it] received the negative rating from [Col.] Princiotta," id. ¶ 23, but also that "Dartmouth-Hitchcock did not use the negative rating from [Col.] Princiotta as a basis for the[] decision," id. ¶ 25. The "[p]laintiff called Lauren Krebs of the [American Medical Recruiters,] who informed her that [Dartmouth-Hitchcock] had stopped the credentialing process, that [Dartmouth-Hitchcock] told her that [the p]laintiff was not granted a locum tenens license . . . , and that they were going to remain silent vis-à-vis [the p]laintiff." Id. ¶ 24. "By letter dated [July 23, 2008,] . . . following [the p]laintiff's 'repeated requests' for answers, [Dartmouth-

---

[6] The statement at issue appears only in the plaintiff's memorandum opposing Col. Princiotta's motion to dismiss, and is not contained in her complaint. The plaintiff does note, however, that "[Col.] Princiotta 'repeated the comment from [Col. Ricanthony] Ashley's [performance] rating of the plaintiff." Compl. ¶ 22. That statement and performance assessment are the subject of another matter filed by the plaintiff and currently pending before this Court, see Budik v. Ashley, No. 12-1949 (D.D.C. filed Dec. 22, 2009); Pl.'s Princiotta Opp'n at 2, and will not be addressed by this Memorandum Opinion.

Hitchcock] finally replied to [the p]laintiff . . . [and] stated that [it] had based the[] decision on th[e] remote incidents that had taken place 23 and 32 years beforehand." Id. ¶ 25.  According to the plaintiff, "[n]o other institution, before, during[,] or after [Dartmouth-Hitchcock], had ever considered these remote incidents important or relevant, . . . and [t]he basis of the[] decision failed to comply with the[] last 5-year-verification rule of relevancy for an in locum[] tenens position." Id. ¶ 25.

The plaintiff subsequently filed complaints with the New Hampshire Human Rights Commission, alleging "discrimination based on race (African-American), color (black), age, and gender (female)." Id. ¶ 30.  The Commission found that there was "no probable cause in [the] face of unverified and inaccurate information." Id. ¶ 34.  The plaintiff then appealed the decision to the Equal Employment Opportunity Commission, which "without investigating the facts, . . . closed the file and adopted the findings of the agency." Id. ¶ 36.

The plaintiff then filed the present lawsuit asserting against Dartmouth-Hitchcock a claim of discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and against Col. Princiotta violations of certain Army regulations, the Fifth and Fourteenth Amendments to the Constitution of the United States, misrepresentation, fraud, and intentional infliction of emotional distress.  Defendant Dartmouth-Hitchcock has moved to dismiss the plaintiff's complaint for lack of personal jurisdiction, and Col. Princiotta and the United States have moved for substitution of the United States in Col. Princiotta's place as the appropriate defendant for two of the plaintiff's claims, as well as for dismissal of the plaintiff's complaint for

lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted.[7]

## II. STANDARDS OF REVIEW

### A. Treatment of Pro Se Pleadings

The pleadings of pro se parties are to be "liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted). However, even though a pro se complaint must be construed liberally, the complaint must still "present a claim on which the Court can grant relief." Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### B. Rule 12(b)(1) Motion to Dismiss

When a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." Biton v. Palestinian Interim Self–Gov't Auth., 310 F. Supp. 2d 172, 176 (D.D.C. 2004); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [a] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the district court may consider materials outside the pleadings in deciding whether to

---

[7] Although the plaintiff did not name the United States in her complaint, the United States joined Col. Princiotta on his motion to dismiss.

grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992)).

### C. Rule 12(b)(2) Motion to Dismiss

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff must make a prima facie showing of the pertinent jurisdictional facts." First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378 (D.C. Cir. 1988) (citations omitted). "[S]pecific acts connecting [the] defendant with the forum" must be alleged by the plaintiff, id. (citation and internal quotation marks omitted) (alteration in original), and mere "[c]onclusory statements '[do] not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction,'" GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (quoting First Chicago, 836 F.2d at 1378-79). In considering a Rule 12(b)(2) motion, "the Court is not required to assume the truth of the plaintiffs' allegations and instead 'may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts.'" Orellana v. Croplife Int'l, 740 F. Supp. 2d 33, 37 (D.D.C. 2010) (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)). However, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted).

### D. Rule 12(b)(6) Motion to Dismiss

A Federal Rule of Civil Procedure 12(b)(6) motion tests whether the complaint "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in the complaint, conclusory allegations "are not entitled to the assumption of truth." Id. at 679.

### III.  LEGAL ANALYSIS

#### A.  Personal Jurisdiction over Dartmouth-Hitchcock

Defendant Dartmouth-Hitchcock argues that it "does not conduct any business in the District of Columbia, nor does the [p]laintiff's claim arise out of any contract between [Dartmouth-Hitchcock] and the District [of Columbia]," and that this Court thus cannot exercise personal jurisdiction over Dartmouth-Hitchcock.  Dartmouth-Hitchcock Mem. at 2.  The plaintiff responds that her own presence in the District of Columbia at the time that she applied for employment with Dartmouth-Hitchcock is enough to connect Dartmouth-Hitchcock to the District of Columbia and to allow this Court to exercise personal jurisdiction over the medical center.  Pl.'s Dartmouth-Hitchcock Opp'n at 1.

For this Court to exercise personal jurisdiction over Dartmouth-Hitchcock, "the plaintiff must plead facts sufficient to satisfy (1) the District of Columbia's long-arm statute, and (2) the constitutional requirements of due process." Cannon v. Wells Fargo Bank, N.A., __ F. Supp. 2d __, __, 2013 WL 764964, at *9 (D.D.C. 2013) (citing GTE New Media Servs., Inc., 199 F.3d at 1347; Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991) ("Even

9

though subject-matter jurisdiction is here predicated upon a federal question, [plaintiffs] must rely on D.C. law to sue nonresident defendants, since no federal longarm statute applies.") (alteration in original)). Under the District of Columbia's long-arm statute,

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>   (1) transacting any business in the District of Columbia;
>   (2) contracting to supply services in the District of Columbia;
>   (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>   (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>   (5) having an interest in, using, or possessing real property in the District of Columbia;
>   (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
>   (7) marital or parent and child relationship in the District of Columbia [if additional prerequisites are satisfied].

D.C. Code § 13-423(a) (2001).

The plaintiff does not allege that defendant Dartmouth-Hitchcock (1) was "contracting to supply services in the District of Columbia," § 13-423(a)(2); (2) has "an interest in . . . real property in the District of Columbia," § 13-423(a)(5); (3) was acting as a surety, § 13-423(a)(6); or (7) has a familial relationship with the plaintiff, § 13-423(a)(7). Accordingly, the Court treats any jurisdictional arguments premised on these sections of the District of Columbia's long-arm statute as conceded. See Lewis v. Dist. of Columbia, No. 10–5275, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) (per curiam) ("'It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the

defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'") (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), aff'd, 98 Fed. Appx. 8 (D.C. Cir. 2004)).

As to § 13-423(a)(1), the plaintiff appears to contend that defendant Dartmouth-Hitchcock transacted business in the District of Columbia by virtue of its communication with her while it was considering her application for employment. Pl.'s Dartmouth-Hitchcock Opp'n at 1-2. However, because even a "defendant's 'regular' phone calls into the District of Columbia from elsewhere do not constitute 'transacting business' in the District of Columbia," FC Inv. Grp. LC v. IFX Mkts., Ltd., 479 F. Supp. 2d 30, 39-40 (D.D.C. 2007) (collecting cases), aff'd, 529 F.3d 1087 (D.C. Cir. 2008), the Court finds the telephone calls and paperwork referenced in the plaintiff's pleadings insufficient to satisfy § 13-423(a)(1).

As to § 13-423(a)(3), jurisdiction must be based on "tortious injury" that is the result of the defendant's "act or omission in the District of Columbia." See § 13-423(a)(3). Here, even if the plaintiff's Title VII claims against defendant Dartmouth-Hitchcock constitute the requisite "tortious injury," she has failed to assert that defendant Dartmouth-Hitchcock committed an "act or omission in the District of Columbia," and thus this Court would not have personal jurisdiction under § 13-423(a)(3). See Margoles v. Johns, 483 F.2d 1212, 1218 (D.C. Cir. 1973) ("The 'act,' of course, is the act of the alleged tortfeasor–here that act, uttering . . . statements, occurred in [in another state]. Nothing can change that fact. The additional fact[] . . . that the injury itself took place within the District[] cannot under our reading of the [District's long-arm statute] grant jurisdiction that is otherwise lacking. Unless we wish to delve into a magical

11

mystery tour of 'projecting presences,' we must find that no jurisdiction can be afforded by virtue of section (a)(3).").

And finally, as to § 13-423(a)(4), the plaintiff has failed to show that defendant Dartmouth-Hitchcock "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia" as required by this section. See § 13-423(a)(4). Defendant Dartmouth-Hitchcock submitted with its motion an affidavit of Neil F. Castaldo, the Chief Legal Officer of Dartmouth-Hitchcock, in which he states that while Dartmouth-Hitchcock potentially has contact with the District by virtue of "job postings for potential employees in several medical journals of national circulation" and "a website that is available to anyone on the world-wide-web," neither the job postings nor the website are targeted specifically to residents of the District. Dartmouth-Hitchcock Mem, Exhibit ("Ex.") 1 (Affidavit of Neil F. Castaldo ) ¶¶ 5-6. The plaintiff fails to rebut Mr. Castaldo's affidavit. In any event, the tenuous connection with the District that defendant Dartmouth-Hitchcock acknowledges is insufficient, because "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites [or journals of national circulation], for this does not by itself show any persistent course of conduct by the defendants in the District." GTE New Media Servs. Inc., 199 F.3d at 1349. And defendant Dartmouth-Hitchcock's interactions with the plaintiff do not change the result, because § 13-423(a)(4) requires "something more besides the alleged injury that would connect the defendant to the District." Kopff v. Battaglia, 425 F. Supp. 2d 76, 86 (D.D.C. 2006) (internal quotation marks omitted) (citing Crane v. Carr, 814 F.2d 758, 763 (D.C.

Cir. 1987)).  Accordingly, the Court cannot exercise personal jurisdiction over defendant Dartmouth-Hitchcock under § 13-423(a)(4).

Because the plaintiff's allegations fail to satisfy any of the seven requirements of the District of Columbia's long-arm statute, this Court does not have personal jurisdiction over Dartmouth-Hitchcock.  The Court must therefore grant defendant Dartmouth-Hitchcock's motion to dismiss the plaintiff's complaint against it.

### B. Substitution of the United States as a Defendant with Respect to the Plaintiff's Second and Third Claims

Col. Princiotta and the United States argue that the United States should replace Col. Princiotta as a defendant in this matter with respect to the plaintiff's second and third claims, both of which sound in tort.  Princiotta Mem. at 6.  Under the Westfall Act, 28 U.S.C. § 2679(d)(2) (2006), which is a part of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 (2006), and governs certain tort claims procedures where such claims are made against the United States or agencies or officers thereof,

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office of employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim . . . shall be deemed to be an action or proceeding brought against the United States . . . and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(2).  By regulation, the authority to make such certifications has been delegated to "[t]he United States Attorney for the district where the civil action or proceeding is brought."  28 C.F.R. § 15.4 (2012).  While the Attorney General's or United States Attorney's

> certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee, . . . it does constitute prima facie evidence that the employee was acting within the scope of his employment.

13

> [A] plaintiff challenging [the certification] bears the burden of coming forward with specific facts [to rebut it].

Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659, 662 (D.C. Cir. 2006) (citations and internal quotation marks omitted) (some alterations in original).

Pursuant to 28 U.S.C. § 2679(d)(2) and 28 C.F.R. § 15.4, Col. Princiotta and the United States submitted with their motion to dismiss a certification stating that "[Col.] Princiotta, M.D., was acting within the scope of his employment as an employee of the United States Air Force at the time of the allegations stated in the [plaintiff's] complaint." Princiotta Mem., Ex. 1 (Certification Pursuant to 28 U.S.C. § 2679). In her opposition, the plaintiff failed to present specific facts suggesting that Col. Princiotta acted outside the scope of his authority, and states only that he acted "in contravention to regulations," Pl.'s Princiotta Opp'n at 3, and generally repeats the allegations made in her complaint, compare id. (alleging that Col. Princiotta "intentionally sent out an unsupported, injurious statement to a prospective employer that he knew would have dire consequences" for the plaintiff), with Compl. ¶¶ 40, 42 (alleging that Col. Princiotta intentionally inflicted emotional distress on the plaintiff by "ma[king] a false claim about [her]").[8] Accordingly, because the plaintiff has not offered specific facts that rebut the § 2679(d)(2) certification that Col. Princiotta was acting within the scope of his authority, the Court must substitute the United States as the appropriate federal defendant for the plaintiff's second and third claims.

---

[8] Although the plaintiff speculates at length about the source of the negative statements and states that she "believes [that Col.] Princiotta[] added the negative statement," id., she filed a complaint in another matter before this Court alleging that another individual, and not Col. Princiotta, authored the statement at issue. First Amended Complaint ¶ 38, Budik v. Ashley, No. 12-cv-1949 (D.D.C. Dec. 22, 2009), ECF No. 29.

14

### C. Subject Matter Jurisdiction over the Plaintiff's Federal Tort Claims Act Claims

Col. Princiotta and the United States argue that the plaintiff's second and third claims, in which she alleges that Col. Princiotta exceeded the scope of his authority, violated various Army regulations, and inflicted emotional distress upon the plaintiff by "ma[king] a false claim" about her, Compl. ¶¶ 39-42, constitute FTCA claims, Princiotta Mem. at 9. They additionally argue that the plaintiff has failed to exhaust her administrative remedies under the FTCA, and that her failure to do so deprives the Court of subject matter jurisdiction to entertain these claims. Id. at 8-9.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). The FTCA is an example of Congress' waiver of sovereign immunity. Under the FTCA, the United States consents to suit in federal district court for certain, but not all, tort claims. See, e.g., Richards v. United States, 369 U.S. 1, 6 (1962). The FTCA does not waive sovereign immunity for "[a]ny claim arising out of . . . libel [or] slander." 28 U.S.C. § 2680(h). Because the plaintiff's second and third claims stem from the allegedly false statements made by Col. Princiotta, Compl. ¶¶ 22, 40, 42 (alleging that Col. Princiotta "published a negative statement to [Dartmouth-Hitchcock] with [the p]laintiff's knowledge," thus violating Army regulations, acting outside the scope of his authority, and inflicting emotional distress on the plaintiff), they are in essence claims asserting causes of action for libel or slander, torts over which this Court does not have subject matter jurisdiction. Accordingly, the Court must dismiss the plaintiff's second and third claims.

The plaintiff contends that the defendants' FTCA arguments are irrelevant because she "is suing Dr. Princiotta in his individual capacity." Pl.'s Princiotta Opp'n at 5, 7. However, as discussed above, the United States, not Col. Princiotta, is the appropriate defendant as to the plaintiff's tort claims.

The plaintiff alternatively contends that "the merits of [her] case do not restrict [her] access [to the Court] to a[n] FTCA claim, as this case does not meet the three-part means test in order that an FTCA claim by plaintiff would be barred." Id. at 7 (citing United States v. Brown, 348 U.S. 110 (1954)). The plaintiff's reliance on Brown is misplaced. In that case, the Supreme Court considered whether a plaintiff, who had been honorably discharged from the United States Army, could pursue an FTCA negligence claim against the United States despite already having received compensation for his injury under the Veterans Act. Brown, 348 U.S. at 110-11. The plaintiff in Brown had suffered a knee injury resulting from negligence on the part of a Veterans Administration Hospital, id. at 110, an injury contemplated by the plain language of the FTCA, see 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims."); 28 U.S.C. § 1346(b)(1) (granting United States district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury"). By contrast, and as explained above, the plaintiff here asserts claims against the United States that are explicitly barred by the FTCA. Accordingly, the issues addressed by the Court in Brown are irrelevant here.

Further, even if the FTCA did not bar the plaintiff's second and third claims, the Court would nonetheless lack subject matter jurisdiction over these claims. "The FTCA 'require[s] the plaintiff[] to file an administrative claim with either the Department of Defense . . . or the

appropriate military department before bringing suit[]' . . . [and] '[t]he failure to exhaust administrative remedies [is] jurisdictional.'" Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (citations omitted).  Here, Col. Princiotta and the United States submitted a declaration stating that "no administrative claim was filed by [the plaintiff] under [the FTCA]."  Princiotta Mem., Ex. 2 (Declaration of Lorenzo Ferguson, Chief, Operations and Records Branch, United States Army Claims Service) ¶ 2.  While the plaintiff lists several dates on which she filed various complaints, she provides no documentation, and it further appears that the complaints related to claims of discrimination and not to tort claims under the FTCA.  See Pl.'s Princiotta Opp'n at 7 (listing claims and complaints filed with the Equal Employment Opportunity Commission).

In sum, because the FTCA explicitly bars the plaintiff's second and third claims, and additionally because the plaintiff failed to exhaust her administrative remedies with respect to her FTCA claims, the Court lacks subject matter jurisdiction to entertain these claims.  The Court must therefore dismiss the second and third claims of the plaintiff's complaint.

### D. The Plaintiff's Fifth and Fourteenth Amendment Claims

Col. Princiotta and the United States argue that the plaintiff's constitutional claims must be dismissed because she "concedes that there is no causal connection between the federal [d]efendants' action and her claimed damage" and, in any event, she has failed to show that she had a property interest in either her reputation or alleged guarantee of employment at Dartmouth-Hitchcock.  Princiotta Mem. at 16.

As an initial matter, only the Fifth Amendment applies to the plaintiff's constitutional claims in this case.  San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522,

542 n.21 (1987) (recognizing that the Fourteenth Amendment applies to state actions, whereas the Fifth Amendment applies to actions by the federal government and its agencies). Accordingly, the Court will treat the plaintiff's claims as arising solely under the Fifth Amendment.

In order to state a cause of action for violation of procedural due process under the Fifth Amendment, the plaintiff must show "(1) a deprivation [by the government]; (2) of life, liberty, or property; (3) without due process of law." Lightfoot v. Dist. of Columbia, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing Propert v. Dist. of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).[9] Here, the plaintiff's own allegations establish that no government action deprived her of potential employment with Dartmouth-Hitchcock. Compl. ¶ 25 ("[Dartmouth-Hitchcock] did not use the negative rating from Dr. Princiotta as a basis for their decision."). And even if the Court reads the plaintiff's complaint as alleging a general governmental deprivation of her reputation, she has still failed to state a sustainable claim. The Supreme Court has made clear that "injury to reputation itself [is] not a 'liberty' interest protected" by the Constitution, even where the government's "statements . . . would undoubtedly damage the reputation of one in [the

---

[9] It is unclear from the plaintiff's complaint whether she intended to assert a cause of action for procedural or substantive due process. Because the facts lend themselves more readily to a procedural due process analysis, the Court has construed the plaintiff's complaint as alleging a cause of action for a violation of procedural due process. However, even if the Court were to construe the plaintiff's claim as one for a violation of substantive due process, the outcome would be the same. This Circuit has stated that "[s]ubstantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests." Wash. Teachers' Union Local No. 6 v. Bd. of Educ. of Dist. of Columbia, 109 F.3d 774, 781 (D.C. Cir. 1997) (citation and quotations omitted). And in order to state a substantive due process claim, a plaintiff must include allegations of the deprivation of a right by the government or by government officials. Id. As discussed above, the plaintiff failed to make such allegations. Compl. ¶ 25 ("[Dartmouth-Hitchcock] did not use the negative rating from Dr. Princiotta as a basis for their decision."). In any event, the conduct complained of in this case hardly constitutes "oppression" and cannot be said to "shock the conscience" or be "legally irrational." See Wash. Teachers' Union Local No. 6, 109 F.3d at 777-78, 781-82 (finding no violation of substantive due process rights where certain rules allowed school principals "to make subjective, virtually unreviewable decisions" with respect to their teachers, including ranking the teachers' performance and selecting which teachers to fire based on those performance assessments).

plaintiff's] position, and impair [her] future employment prospects." Siegert v. Gilley, 500 U.S. 226, 233-34 (1991) (holding that negative statements made by the military-physician plaintiff's former supervisor were not actionable under the Fifth Amendment despite the fact that the statements damaged the plaintiff's reputation and prevented him from obtaining employment). Accordingly, the plaintiff has failed to state a claim for a violation of her procedural due process rights, and the Court must dismiss her constitutional claims.

## IV.  CONCLUSION

For the foregoing reasons, the Court grants the defendants' motions to dismiss.

**SO ORDERED** this 5th day of April, 2013.[10]

REGGIE B. WALTON<br>United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with the Memorandum Opinion.